**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MLCJR, LLC, COX OIL, LLC, COX OPERATING, L.L.C., COX OIL OFFSHORE, L.L.C., CEXXI, INC., COX INVESTMENT PARTNERS LP, AND ENERGY XXI GULF COAST, INC.**<br><br>*Plaintiffs,*<br><br>vs.<br><br>**PDP GROUP, INC. D/B/A AMYNTA SURETY SOLUTIONS**<br><br>*Defendant.* | 1:22-cv-00616 (LEK/CFH) |

**PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, TEMPORARY RESTRAINING ORDER, <u>PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION</u>**

Plaintiffs MLCJR, LLC, Cox Oil, LLC, Cox Operating, L.L.C., Cox Oil Offshore, L.L.C., CEXXI, LLC, Cox Investment Partners LP, and Energy XXI Gulf Coast, Inc. (collectively, "Plaintiffs") file this Verified Complaint for Declaratory Judgment, Damages, Temporary Restraining Order, Preliminary Injunction and Permanent Injunction and complains of Defendant, PDP Group, Inc. d/b/a Amynta Surety Solutions ("Amynta") as follows:

**I.      Introduction**

This action concerns a surety, Amynta, which had issued multiple bonds in support of Plaintiffs' oil and gas operations, but now has suddenly and unjustifiably made a formal demand requiring Plaintiffs to provide Amynta with an irrevocable letter of credit within ten days in the full amount of all the bonds, approximately $100 million. Within the surety industry, the collateral needed to support a bond is customarily a small fraction of the total underlying obligation.

1317203v.3

A demand for cash equivalent of all the collateral, like Amynta's here, is an extraordinary event, usually occurring when a bond's principal is teetering on insolvency. Yet, no triggering event has occurred here. No claim has been asserted against any of the bonds, and Amynta's liability under the bonds has not changed. Amynta's full collateral demand is therefore unreasonable and unlawful. To protect against irrevocable harm to the Plaintiffs, Amynta's misconduct must be enjoined.

The Plaintiffs are a group of affiliated companies whose business focuses on offshore oil and gas development and extraction in the Gulf of Mexico. As with all oil and gas operators, maintaining bonds is a critical requirement for the operation of Plaintiffs' offshore leases under both state and federal law. These bonds cover a broad array of obligations, from rights of way for pipelines to plug-and-abandonment costs. Amynta is just one of ten surety companies to have issued extant bonds on the Plaintiffs' behalf.

By issuing the total collateral demand on its bonds, Amynta has violated New York law. Despite whatever unilateral authority a contract may grant to a surety, New York law restricts sureties by only allowing them to request increased collateral amounts that are reasonable under the circumstances. Amynta has made no effort to comply with these governing legal standards. Instead, Amynta demanded a cash-equivalent letter of credit in the full amount of all its bonds, totaling approximately $100 million, without any reasonable basis. In doing so, Amynta has breached New York law and violated its duty of good faith and fair dealing to the Plaintiffs.

In addition, Amynta's arbitrary and unlawful demand for maximum collateral support threatens the Plaintiffs with irreparable injury. When one surety makes such an extraordinary demand, it can provoke other sureties who have issued bonds to the same principal to likewise require 100 percent collateral coverage of their undischarged liabilities, thereby leading

- 3 -

to a proverbial "run on the bank."  Indeed, in mere days since Amynta issued its collateral demand letter, another of the Plaintiffs' sureties has made a copycat request.  Such cascading demands for liquid collateral would quickly subsume an otherwise solvent business.  Unless an oil and gas company were somehow positioned to post full cash support for all its existing bonds within ten days, it would be forced to resort to bankruptcy protection.  To avoid this irreparable harm, this Court should enjoin Amynta from enforcing its collateral demand.

## II.     Parties

1. MLCJR, LLC is a Texas limited liability company with a principal place of business in Texas.  The members of MLCJR, LLC ("MLCJR") are (1) Cox Investment Partners, LP, a Delaware limited partnership, (2) CLS Development LLC, a Texas limited liability company, and (3) WIN Management LLC, a Delaware limited liability company.  Cox Investment Partners, LP is owned by Mr. Brad Cox, a resident of Texas, and Cox Management Dallas, LLC, a Delaware limited liability company, which is in turn owned by is Edwin L. Cox B Trust FBO BEC, a trust formed in Texas.  CLS Development LLC is owned by Mr. Craig L. Sanders, a resident of Texas.  WIN Management LLC is owned by Mr. William Graham, a resident of Texas.  For purposes of diversity jurisdiction, MLCJR is considered a resident of Delaware and Texas.

2. Cox Oil, LLC is a Delaware limited liability company with a principal place of business in Texas.  The sole member of Cox Oil, LLC is Edwin L. Cox B Trust FBO BEC, a trust formed in Texas.   For purposes of diversity jurisdiction, Cox Oil, LLC is considered a resident of Delaware and Texas.

3. Cox Operating, L.L.C. is a Louisiana limited liability company with a principal place of business in Texas.  The sole member of Cox Operating, L.L.C. is Phoenix Petro Services, LLC, a Delaware limited liability company, which is in turn owned by Mr. Brad Cox, a

resident of Texas.  For purposes of diversity jurisdiction, Cox Operating, L.L.C. is considered a resident of Delaware, Louisiana and Texas.

    4. Cox Oil Offshore, L.L.C. is a Louisiana limited liability company with a principal place of business in Texas.  Its sole member is MLCJR.  For purposes of diversity jurisdiction, Cox Oil Offshore, L.L.C. is considered a resident of Delaware, Louisiana and Texas.

    5. CEXXI, LLC (f/k/a CEXXI, Inc.) is a Delaware limited liability company with a principal place of business in Texas.  The sole member of CEXXI, LLC is MLCJR.  For purposes of diversity jurisdiction, CEXXI, LLC is considered a resident of Delaware and Texas.

    6. Cox Investment Partners, LP is a Delaware limited partnership.  The partners of Cox Investment Partners, LP are Mr. Brad Cox, a resident of Texas, and Cox Management Dallas LLC, a Delaware limited liability company, which is in turn owned by is Edwin L. Cox B Trust FBO BEC, a trust formed in Texas.  For purposes of diversity jurisdiction, Cox Investment Partners, LP is considered a resident of Delaware and Texas.

    7. Energy XXI Gulf Coast, LLC (f/k/a Energy XXI Gulf Coast, Inc.) is a Delaware limited liability company with a principal place of business in Texas.  Its sole member is MLCJR.  For purposes of diversity jurisdiction, Energy XXI Gulf Coast, LLC is considered a resident of Delaware and Texas.

    8. PDP Group, Inc. d/b/a Amynta Surety Solutions is a Maryland corporation with a principal place of business in Hunt Valley, Maryland.  It holds out its corporate address to be 909 Third Avenue, 33rd floor, New York, New York 10022, and maintains executive offices in Connecticut.  For purposes of diversity jurisdiction, PDP Group, Inc. is considered a resident of Connecticut, Maryland and New York.

### III. Jurisdiction and Venue

9. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

10. This Court has personal jurisdiction over Amynta because, although formed in Maryland, Amynta is registered to do business, and does conduct business, in the State of New York. It further holds out its primary office to be located in New York.

11. Venue for this case is proper in this Court because the governing contract here – the General Agreement of Indemnity between Plaintiffs and Amynta dated April 15, 2016 – contains a forum and venue selection clause requiring all actions or proceedings arising directly or indirectly from GAI to be litigated in any local, state or federal court located in the State of New York.

### IV. Factual Background

12. Amynta is a surety that is in the business of issuing surety bonds.

13. Amynta has sixteen bonds totaling $99,443,460.00 with Plaintiffs as principals/indemnitors and various entities as obligees (the "Bonds").

14. The Bonds, which relate to various components of the Plaintiffs' oil and gas operations in the Gulf of Mexico, may be summarized as follows:

| Bond Number | Surety | Principal | Obligee | Description | Bond Amount |
|---|---|---|---|---|---|
| 612410365 | Aspen/Amynta | Energy XXI GOM, LLC | USDOI BOEM | Outer Continental Shelf (OCS) Mineral Lessee's and Operator's Bond - Area Wide Development - Gulf of Mexico (previously SU32704) | $3,000,000 |
| 612410366 | Aspen/Amynta | Energy XXI GOM, LLC | USDOI BOEM | Outer Continental Shelf (OCS) Pipeline Right of Way Grant Bond - Areawide - Gulf of Mexico (previously SU32705) | $300,000 |
| 612410199 | Aspen/Amynta | Energy XXI Onshore, LLC | LA Office of Conservation | Blanket Performance Bond for Multiple Wells | $125,000 |
| 612410265 | Aspen/Amynta | Energy XXI GOM, LLC | LA Office of Conservation | Blanket Performance Bond for Multiple Wells | $1,250,000 |

| Bond Number | Surety | Principal | Obligee | Description | Bond Amount |
|---|---|---|---|---|---|
| 612410199 | Aspen/Amynta | Energy XXI Texas Onshore, LLC | Texas Railroad Commission | Blanket Performance Bond for P5 No. 251858 | $25,000 |
| 612410200 | Aspen/Amynta | Energy XXI Texas Onshore, LLC | Texas Railroad Commission | Blanket Performance Bond for P5 No. 251858 | $100,000 |
| 612410290 | Aspen/Amynta | Energy Partners Ltd. | Devon Energy Production Company | Abandonment Bond for Purchase Sale Agreement Dated: January 1, 2000 | $30,000,000 |
| 612410262 | Aspen/Amynta | Cox Oil Offshore, L.L.C. | Chevron USA Inc. and Union Oil | Performance Bond for Asset Sale and Purchase Agreement effective 08/01/2015 | $48,000,000 |
| 612410370 | Aspen/Amynta | Cox Oil Offshore, L.L.C. | USDOI BOEM | OCS Mineral Lessee's or Operator's Bond Areawide - Gulf of Mexico | $3,000,000 |
| 612410371 | Aspen/Amynta | Cox Oil Offshore, L.L.C. | USDOI BOEM | OCS Pipeline Right-of-Way Grant Bond Areawide - Gulf of Mexico | $300,000 |
| SU14214 | Aspen/Amynta | Metis Group, LLC | LA Dept. of Revenue | Motor Fuels Tax Surtey Bond for Distributor | $20,000 |
| 612410061 | Aspen/Amynta | Cox Operating, L.L.C. | USDI, ONRR | Administrative Appeal Bond ROY100569396 - 03/27/2020 | $2,779,216 |
| 612410062 | Aspen/Amynta | EPL Oil & Gas, LLC | USDI, ONRR | Administrative Appeal Bond ROY100569186 - 03/26/2020 | $2,444,244 |
| 612410135 | Aspen/Amynta | EPL Oil & Gas, LLC | Union Oil Company of California | Performance Bond for Asset Sale and Purchase Agreement for 2009 GOM offshore Package dated June 5, 2009 | $7,500,000 |
| 612410239 | Aspen/Amynta | Energy XXI Pipeline, LLC | USDOI BOEM | Outer Continental Shelf (OCS) Pipeline Right of Grant Bond Areawide Gulf of Mexico (Previously SU32715) | $300,000 |
| 612410240 | Aspen/Amynta | Energy XXI Pipeline II, LLC | USDOI BOEM | Outer Continental Shelf (OCS) Pipeline Right of Way Bond Area wide Gulf of Mexico (Previously SU32716) | $300,000 |

15. The parties' relationship is governed by the General Agreement of Indemnity between Plaintiffs and Amynta dated April 15, 2016 (the "GAI").[1]

16. Section 11 of the GAI provides:

> It is mutually agreed that this Agreement is deemed made in the State of New York and shall be interpreted, and the rights and liabilities of the parties determined, in accordance with the laws of the State of New York. Indemnitors agree that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consent to personal jurisdiction and venue of any local, state or federal court located therein.[2]

---

[1] A copy of the GAI is attached hereto as Exhibit A.

[2] *See* Ex. A (GAI) at ¶ 3.

17. In March 2022, Amynta entered into discussions with Plaintiffs about one bond within the set of sixteen, specifically the Abandonment Bond for Purchase Sale Agreement dated January 1, 2000 in favor of Devon Energy Production Company, totaling $30,000,000.00 (the "Devon Bond").

18. The Devon Bond is unusual because it is to be replaced by two third parties, namely Whitney Oil & Gas, LLC ("Whitney") and Trimont Energy (NOW), LLC ("Trimont").

19. In 2015, Whitney and Trimont entered into a purchase and sale agreement (the "PSA") with EPL Oil & Gas, LLC ("EPL"), an affiliate of the Plaintiffs.

20. Pursuant to the PSA, Whitney and Trimont are required to swap out the Devon Bond with a replacement bond. To date, however, Whitney and Trimont have failed to comply with their contractual obligation to do so.

21. EPL therefore has been forced to file suit against Whitney and Trimont to compel them to replace the Devon Bond as required under the PSA. That action is currently pending in the United States District Court for the Eastern District of Texas, Tyler Division.

22. Even so, no claim has been made on the Devon Bond, and EPL remains the principal under the instrument. Accordingly, Amynta's liability under the Devon Bond is unchanged.

23. Amynta has used Whitney and Trimont's failure to comply with their contractual obligation to replace the Devon Bond as a pretext for requesting additional collateral in support of that bond alone, which totals $30 million.

24. The parties' discussions regarding this funding request continued until Amynta abruptly cut them short. On May 23, 2022, Amynta unilaterally demanded that Plaintiffs must execute a revised collateral funding agreement for the Devon Bond within four days. If this

deadline was not met, Amynta threatened that it would "send out a formal indemnity demand for the entire amount of Amynta's exposure (~$100mm) on Friday, May 27, 2022."[3]

25. Amynta's unilateral deadline to execute the new collateral funding agreement was subsequently extended to June 2, 2002, but that still did not offer the parties enough time to reach a mutually-agreed resolution.

26. Amynta's arbitrary deadline prevented the parties for reaching a resolution on how, and in what amounts, to fund any additional collateral support for the Devon Bond.

27. On June 2, 2022, Amynta issued its collateral demand letter to the Plaintiffs (the "Demand Letter").[4] In it, Amynta demanded that the Plaintiffs provide Amynta "with an Irrevocable Letter of Credit (ILOC) in the amount of **NINETY-NINE MILLION FOUR HUNDERD FORTY-THREE THOUSAND FOURT HUNDER SIXTY 00/100 ($99,443,446.00) DOLLARS,** the total amount of all undischarged liability under the Bond(s), within ten (10) days of your receipt of this letter."[5]

28. In the Demand Letter, Amynta further threatens: "Please be aware that, in the event that [Plaintiffs] fail and/or refuse to comply with this demand, [Amynta] will be left with no choice but to immediately pursue any and all remedies available to it under the GAI in order to protect its rights and interests."[6]

29. Upon information and belief, the Demand Letter is not tied to any existing claim against any of the Bonds.

---

[3] *See* May 23, 2022 correspondence from Hilary Killian, a copy of which is attached hereto as Exhibit B.

[4] A copy of Amynta's Demand Letter is attached hereto as Exhibit C.

[5] *See* Ex. C (Demand Letter) at 2 (original emphasis).

[6] *Id*.

30. Amynta has no good faith basis for believing that Plaintiffs' financial standing has been materially impaired. In fact, Plaintiffs' overall financial position is stronger than when Amynta first entered into the GAI with Plaintiffs on April 15, 2016. Likewise, the Plaintiffs' overall financial position is stronger now than when Amynta entered into three separate Riders to the GAI, by which additional bonds were issued, on November 13, 2018, October 21, 2020, and June 3, 2021.

31. Further, there has been no change to Amynta's underlying liability under the Bonds.

32. In sum, there is no rational nexus for Amynta to demand complete collateral coverage of the Bonds through a letter of credit of approximately $100 million.

33. Moreover, the increased collateral amount bears no rational relationship to an increase in Amynta's potential liability exposure under the Bonds.

34. For these reasons, the Demand Letter violates the restrictions that New York law places on sureties issuing demands for increased collateral.

35. If Amynta is permitted to enforce its demand, Plaintiffs' operations will be severely and adversely impacted in the midst of an already volatile global energy market.

36. By issuing its Demand Letter, Amynta has incentivized the Plaintiffs' other sureties to take similar action lest they be left with anything short of 100 percent collateral coverage on their outstanding bonds.

37. Indeed, one of the Plaintiffs' other sureties has issued such a demand, requiring complete collateral coverage for its bonds, in the wake of Amynta's Demand Letter.

38. Such a "run on the bank" scenario would have dire consequences for the Plaintiffs' ongoing operations – as it would for any solvent oil and gas company when faced with

an unjustified, and unjustifiable, demand for liquid collateral for the entirety of its bond obligations. If the Plaintiffs were required to immediately post cash-equivalent collateral to cover the full amount of all its existing bonds over the breadth of their operations, the only available remedy would be the automatic stay afforded by federal bankruptcy law.

39. In a last ditch effort to avoid requiring judicial intervention, Plaintiffs requested that Amynta voluntarily withdraw the Demand Letter prior to Plaintiffs filing suit. Amynta, however, refused to do so, thereby necessitating the commencement of this lawsuit.[7]

## V. Causes of Action

**First Cause of Action – Declaratory Relief**

40. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 39 above.

41. A dispute exists between Plaintiffs and Amynta as to whether the GAI authorizes Amynta to demand collateral in the full amount of the Bonds without any underlying reasonable justification.

42. Under New York law, the covenants of good faith and fair dealing mandate that any collateral demand by Amynta must reasonable and not arbitrary or irrational.

43. Even if Amynta has a good faith basis for believing that the risk relating to the Devon Bond has changed, which is denied, Amynta is not entitled to arbitrarily levy the entire amount of the Bonds as a penalty for not agreeing to fund collateral for the Devon Bond on Amynta's arbitrary timeline.

44. Accordingly, Plaintiffs seek a judgment from this Court declaring that:

   a) Amynta is not permitted to enforce its Demand Letter; and

---

[7] A copy of Plaintiffs' June 9, 2022 correspondence with Amynta is attached hereto as Exhibit D.

    b)  Amynta cannot demand any additional collateral support from the Plaintiffs under the GAI absent a reasonable basis for the demand.

**Second Cause of Action – Breach of Contract**

  45.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 44 above.

  46.  Plaintiffs and Amynta entered into the GAI, which is a binding and enforceable bilateral contract.

  47.  Plaintiffs have fulfilled their obligations under the GAI.

  48.  Amynta, however, has breached its contractual obligations under the GAI by improperly and unreasonably demanding collateral in the full amount of the Bonds.

  49.  Amynta's ongoing breach of the GAI has caused, and is continuing to cause, injury to Plaintiffs.

  50.  Amynta therefore is liable to Plaintiffs for damages owing to its ongoing breach of the GAI.

**Third Cause of Action – Breach of Duties of Good Faith and Fair Dealing**

  51.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 50 above.

  52.  By reason of Amynta's contractual undertaking to Plaintiffs pursuant to the GAI, Amynta owed – and continues to owe – Plaintiffs the duties of good faith and fair dealing in connection with the parties' contractual relationship.

  53.  In accordance with these duties, Amynta is prohibited from undertaking any act that would have the effect of injuring or destroying Plaintiffs' rights under the GAI.

1317203v.3

54. By unreasonably and arbitrarily demanding collateral for the full amount of the Bonds, Amynta acted in bad faith and breached the duties of good faith and fair dealing owed to Plaintiffs.

55. Amynta therefore is liable to Plaintiffs for damages owing to its ongoing breach.

**Fourth Cause of Action – Violation of GBL § 349**

56. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 55 above.

57. Amynta, and its agents, servants and/or employees, are prohibited from engaging in deceptive acts and practices pursuant to GBL § 349 of the State of New York.

58. GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the State of New York and makes such acts and practices unlawful.

59. Amynta, through its agents, servants and/or employees, has engaged deceptive acts and practices in violation of GBL § 349 of New York by its unreasonable, bad faith demand for collateral.

60. These actions have not only caused injury to Plaintiffs, but have the potential to harm the public at large. In essence, Amynta, a surety company doing business in the State of New York, is issuing bonds to indemnitees, then later interpreting the agreement for the bonds to allow Amynta to require collateral for the full amount of the bonds, without any proof of increased liability, claim, or expense as to the bonds.

61. Amynta's outrageous actions demonstrate that degree of bad faith evincing a disingenuous, dishonest failure to carry out a contractual obligation.

1317203v.3

62. As a result of the aforesaid violations of GBL § 349 of the State of New York, Amynta is liable to Plaintiffs for damages owing to its ongoing breach of the GAI.

63. As a further result of Amynta's violations of GBL § 349 of the State of New York, Plaintiffs are entitled to attorney's fees.

64. Further, due to the willful and wanton nature of Amynta's conduct and the need to deter same to prevent public harm and injury. Plaintiffs demand punitive damages in the amount to be established at trial.

### VI. Application for Temporary Restraining Order

65. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 64 above.

66. Plaintiffs seek a temporary restraining order that enjoins Amynta from enforcing its Demand Letter.

67. It is probable that Plaintiffs will prevail in their claims in this action. Upon information and belief, the Demand Letter is not tied to any existing claim against any of the Bonds. Amynta has no good faith basis for believing that Plaintiffs' financial standing has been materially impaired. Further, there has been no change to Amynta's underlying liability under the Bonds. The increased collateral amount bears no rational relationship to an increase any potential liability exposure of Amynta. In sum, there is no reasonable basis for Amynta to demand complete collateral coverage of the Bonds through a letter of credit of approximately $100 million. For these reasons, the Demand Letter violates the restrictions that New York law places on sureties issuing demands for increased collateral.

68. If Plaintiffs' application for a temporary restraining order is not granted, harm is imminent and existing because Amynta has represented that it will seek to enforce the Demand Letter within than 10 days of its issuance by using any and all available means.

69. The harm that will result if the temporary restraining order is not issued is irreparable because Plaintiffs will be unable to prevent Amynta from violating Plaintiffs' rights under the GAI. If Amynta is allowed to enforce it Demand Letter, Plaintiffs operations will be significantly impacted in the midst of an already volatile global energy market. Further, by issuing its Demand Letter, Amynta has incentivized the Plaintiffs' other sureties to take similar action lest they be left with anything short of 100 percent collateral coverage on their outstanding bonds. Indeed, one of the Plaintiffs' other sureties has issued such a demand, requiring complete collateral coverage for its bonds, in the wake of Amynta's Demand Letter. Such a "run on the bank" scenario would have dire consequences for the Plaintiffs' ongoing operations. If the Plaintiffs were required to immediately post cash-equivalent collateral to cover the full amount of all its existing bonds over the breadth of its operations, the only available remedy would be the automatic stay afforded by federal bankruptcy law.

70. Plaintiffs have no adequate remedy at law because money damages cannot compensate for the critical damage that Amynta's Demand Letter will cause to Plaintiffs' relationship with their other sureties.

71. The equities here mitigate in the Plaintiffs' favor. For the reasons stated above, Plaintiffs will suffer harm of such a magnitude that it cannot be quantified. Amynta, however, has provided no justification for the collateral demand, indicating it stands to suffer no harm if it is barred from its unreasonable and baseless demand for approximately $100 million in

cash-equivalent collateral from Plaintiffs.  If the Court grants the requested injunctive relief, the status quo will be maintained and Amynta is no worse off than it was when it issued the Bonds.

72. Plaintiffs will suffer immediate and irreparable injury, loss, or damage before notice can be served on Amynta and a hearing can be held on Plaintiffs' application for a temporary injunction because Amynta has repeatedly represented that it will pursue any and all means to enforce the Demand Letter as soon as June 12, 2022.

73. Plaintiffs are willing to post bond if the Court deems it appropriate.

### VII.   Request for Preliminary Injunction

74. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 73 above.

75. Plaintiffs respectfully request the Court to set its request for preliminary injunction for hearing and, after hearing the matter, issue a preliminary injunction prohibiting Amynta from enforcing the Demand Letter until the final hearing and determination of this action.

### VIII.   Request for Permanent Injunction

76. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 75 above.

77. Plaintiffs respectfully request the Court, after final hearing and determination of this action, to issue a permanent injunction perpetually enjoining and restraining Amynta from:

    a) enforcing its Demand Letter; and

    b) demanding any additional collateral support from the Plaintiffs under the GAI absent a reasonable basis for the demand.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs MLCJR, LLC, Cox Oil, LLC, Cox Operating, L.L.C., Cox Oil Offshore, L.L.C., CEXXI, LLC, Cox Investment Partners, LP and Energy XXI Gulf Coast, LLC pray that this Court issue a Temporary Restraining Order and a Preliminary Injunction as requested above, and that Defendant, PDP Group, Inc. d/b/a Amynta Surety Solutions be cited to appear and answer and that upon final trial, Plaintiffs have judgment against Defendant:

a) for declaratory relief as provided herein;
b) for damages in excess of the jurisdictional minimum of this court;
c) perpetually enjoining and restraining Amynta enforcing its Demand Letter, and demanding any additional collateral support from the Plaintiffs under the parties General Agreement of Indemnity absent a reasonable basis for the demand;
d) for costs of court;
e) for attorneys' fees;
f) for pre-judgment and post-judgment interest;
g) for exemplary damages;
h) for declaratory relief as provided herein; and
i) for any such and further relief to which Plaintiffs may be entitled.

Dated: June 9, 2022  
       Albany, New York

Respectfully submitted,

**CULLEN AND DYKMAN LLP**

By: /s/ *Nicholas J. Faso*

Nicholas J. Faso, Esq.  
80 State Street, Suite 900  
Albany, New York 12207  
Telephone: (518) 788-9440  
Facsimile: (518) 689-9519  
Email: nfaso@cullenllp.com

- and -

- 17 -

                **STONE PIGMAN WALTHER WITTMANN LLC**

By: _____
      James C. Gulotta Jr., Esq.
      Paul J. Masinter, Esq.
      Andrew D. Mendez, Esq.
      Bryant S. York, Esq.
      909 Poydras Street, Suite 3150
      New Orleans, Louisiana  70112
      Telephone:  (504) 581-3200
      Facsimile:  (504) 581-3361
      Email:  jgulotta@stonepigman.com
              pmasinter@stonepigman.com
              amendez@stonepigman.com
              byork@stonepigman.com

*Attorneys for Plaintiffs*

## VERIFICATION

STATE OF TEXAS )
) s.s.:
COUNTY OF DALLAS )

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the aforesaid state and county, personally came and appeared:

CRAIG L. SANDERS

who, being duly sworn, did depose and state that:

1. I am a competent major domiciled in the County of Dallas, State of Texas.

2. I am capable of making this verification.

3. I have read the foregoing Plaintiffs' Verified Complaint for Declaratory Judgment, Damages, Temporary Restraining Order, Preliminary Injunction and Permanent Injunction.

4. The facts stated in it are within my personal knowledge, and are true and correct.

_____
CRAIG L. SANDERS

SWORN TO AND SUBSCRIBED before me this 8th day of June, 2022 in Dallas, Texas.

_____
Notary Public in and for
The State of Texas
My commission expires: 4/11/2023

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

1317353v.1